**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OSCAR SMITH, JR. and | : | CIVIL ACTION |
| O. SMITH AGENCY, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| THE ALLSTATE CORPORATION | : | |
| and THE ALLSTATE INSURANCE | : | |
| COMPANY | : | NO.   12-0144 |

------------------------

| | | |
|---|---|---|
| GREG BURRIS and | : | CIVIL ACTION |
| THE GREG BURRIS AGENCY | : | |
| | : | |
| v. | : | |
| | : | |
| THE ALLSTATE CORPORATION | : | |
| and THE ALLSTATE INSURANCE | : | |
| COMPANY | : | NO.   12-0145 |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                                July 10, 2012

The defendants, The Allstate Corporation and The Allstate Insurance Company (collectively, "Allstate") have moved to dismiss the complaint filed by Greg Burris and Oscar Smith, Jr., former Allstate insurance agents, in which they allege that Allstate engaged in a hostile takeover of their insurance agency businesses. According to the plaintiffs, Allstate induced them to sign exclusive agency agreements by extolling the benefits of the agreements. After they built their businesses under the agency relationship, Allstate established customer satisfaction standards that set the plaintiffs up to fail. When the plaintiffs did not meet these standards, Allstate terminated the agreements and forced the plaintiffs to sell their books of business to Allstate-approved agents at below-market rates.

The plaintiffs filed suit as individuals and on behalf of their agencies alleging that Allstate fraudulently or negligently induced them to enter into the contracts, was fraudulent or negligent in the performance and termination of the contract, and breached the duty of good faith and fair dealing.  They assert that Allstate breached their contracts when it did not provide their agencies with formal reviews and was unjustly enriched when it forced them to sell their books of business to Allstate-approved agents for less than they were worth.  The plaintiffs, African Americans, also claim that Allstate's performance under and termination of the agency agreements was discriminatory, in violation of 42 U.S.C. § 1981.[1]  Allstate has moved to dismiss all claims.  After carefully reviewing the plaintiffs' complaints, Allstate's motions and the plaintiffs' consolidated response, we shall grant the motion to dismiss on all claims except the one for breach of contract.

## Background

In June of 2000, Allstate terminated its employer-employee relationships with its incumbent agents.  These agents were given three options: (1) become independent contractors to sell only Allstate products pursuant to an Allstate Exclusive Agency Agreement ("agency agreement"); (2) become temporary independent contractors to sell the existing books of business they had generated while they had been Allstate employees; or, (3) accept a severance package.  Smith and Burris chose the first option, electing to become exclusive Allstate agents.

According to Smith, Allstate told him that if he sold Allstate products as an

---

[1] Upon the order of Chief Judge Joyner, the Burris and Smith cases were consolidated for pre-trial purposes.

independent contractor, he would have a major stake in his business, including his book of business, and be able to grow his business more profitably.  Smith claims that he relied on these representations, incorporated his own insurance agency, and signed the R3001A agency agreement on behalf of his agency.[2]

The plaintiffs claim that they achieved exemplary results as independent contractors.  Smith alleges that he built and maintained a book of business that generated approximately $3,000,000 per year in insurance premiums, and Burris claims that he generated premiums of approximately $1,000,000 per year.  The customer retention rates for both agencies were at or above the national and regional averages over a ten-year period.

Allstate periodically evaluates each agency and produces a report known as the Agency Status Review, which measures expected results based on a number of factors including the agency's productivity, retention, and profitability.  In 2007, Allstate implemented a new client survey called the Agency Loyalty Index ("ALI").  Allstate conducted the survey through questionnaires mailed to each agency's clients to measure customer satisfaction.  Before Allstate implemented the ALI, customer satisfaction was measured by retention rates.  In March 2009, Allstate informed its agents that the ALI would be included as part of its calculation of expected results.

In the 2009 ALI survey, both the Burris and Smith agencies scored below sixty, the benchmark established by Allstate.  Both agencies received warning letters issued by

---

[2] Burris does not identify any specific representations that Allstate made to induce him to sign the agency agreement.  Instead, his complaint alleges that "[t]o induce [him] to become an Allstate captive agent, Allstate publicly extolled the virtues of the exclusive agency agreement."  Burris Compl. ¶ 98.  Burris signed the R3001S agreement on his own behalf and incorporated an agency.

Allstate stating that "failure to achieve a score of 60 or higher in the 2010 survey could jeopardize [their] relationship[s] with Allstate."[3]  Despite efforts to raise their scores, the plaintiffs again failed to score sixty or higher on the 2010 ALI.  The plaintiffs allege that much of the negative feedback on the 2010 ALI was due to Allstate increasing their customers' premiums.  The plaintiffs also allege that in determining customer satisfaction, Allstate failed to make adjustments for demographics, including the ethnic and racial make-up of the customer bases, thus giving them low scores that were not representative of their overall performances.

Based on their ALI scores, Allstate terminated Smith and Burris's agency agreements on February 21, 2011 and August 30, 2011 respectively.[4]  Plaintiffs allege that once Allstate terminated the agreement, their only options were to sell their books of business to an Allstate-approved buyer or accept a severance and forfeit their books to Allstate.  Both plaintiffs sold their books at what they claim were below-market rates.  The plaintiffs, both African American, also claim that their agencies were the only Pennsylvania-based ones whose agency agreements were terminated because of low ALI scores.

The plaintiffs bring claims for fraud, negligence, unjust enrichment, breach of contract, breach of good faith and fair dealing, and discrimination in contracting in violation of 42 U.S.C. § 1981 to recover for damages for monetary loses and emotional distress. Allstate has moved to dismiss all claims.

---

[3] Burris Compl. ¶ 47; Smith Compl. ¶ 55.

[4] Burris Compl. ¶ 53; Smith Compl. ¶ 63.

## Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

A complaint is subject to dismissal if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

We apply a three-step approach in examining the complaint to determine the sufficiency of a claim under *Iqbal* and *Twombly*. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). First, we identify the elements the plaintiffs must plead to state a claim. *Id.* (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). Second, we discount conclusory allegations because they are not entitled to the assumption of truth. *Id.* (quoting *Santiago*, 629 F.3d at 130). Third, we assume the veracity of well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement for relief. *Id.* (quoting *Santiago*, 629 F.3d at 130).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ.

P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). We may consider authentic documents that form the basis of the plaintiffs' claims. *See Mayer v. Belichick*, 506 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputably authentic documents if the complainant's claims are based upon these documents.") (citations and quotations omitted). With these standards in mind, we shall accept as true the facts as they appear in the plaintiffs' complaints and draw all possible inferences from these facts in their favor.

### Fraudulent Inducement and Negligent Misrepresentation

In Counts Four and Five of the complaints, the plaintiffs allege that Allstate acted fraudulently and negligently in the inducement, performance and termination of the agency agreements. Allstate argues that the fraud allegations lack the degree of specificity required by Federal Rule of Civil Procedure (9)(b); the alleged fraudulent and negligent statements are inadmissible under the parol evidence rule; and, the claims are barred by the "gist of the action" doctrine, the "economic loss" doctrine, and the statute of limitations.

Federal Rule of Civil Procedure 9(b) requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To meet this standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Under Pennsylvania law, which the parties agree applies, the elements for fraud are: (1) the defendant made a representation; (2) the fact represented was material to the transaction; (3) the defendant knew it was false or made it recklessly without regard for its truth or falsity; (4) the defendant intended the plaintiff to rely on it; (5) the plaintiff justifiably relied on it; and (6) the plaintiff suffered damages proximately caused by the misrepresentation. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). A claim for fraudulent inducement requires that the misrepresentation was made with the intent to induce another to enter into a contract. *In re Allegheny Int'l*, 954 F.2d 167, 178 (3d Cir. 1992).

Plaintiffs allege that Allstate, through misrepresentations, induced them to enter into the agency agreements and become independent contractors. According to Smith, he relied upon Allstate's representations that he would have a major stake in his business, own his book of business, and be able to grow his businesses in a more profitable way.[5] Smith's recitation of the alleged fraudulent statements upon which he relied is sufficiently specific to meet Rule 9(b)'s requirements.

Unlike Smith, Burris does not identify any statements Allstate made that fraudulently induced him to sign the agency agreement. Instead, he avers that Allstate "publicly extolled the virtues of the exclusive agency agreement," knowing that these representations were false.[6] These general allegations, unsupported by any reference to a false statement of fact, lack the specificity required by Rule 9(b).

---

[5] Smith Compl. ¶¶ 30-31.

[6] Burris Compl. ¶¶ 98-99.

Allstate also argues that the parol evidence rule prohibits the plaintiffs from introducing the fraudulent or negligent statements that support the plaintiffs' inducement claims.   Under Pennsylvania law, the parol evidence rule bars consideration of prior representations concerning matters covered in a fully integrated agreement.  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1299-1300 (3d Cir. 1996) (discussing *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279-80 (Pa. 1995)); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004) ("Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.") (citation omitted).   For the parol evidence rule to apply, there must be an integrated written contract.  *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 203-04 (Pa. 2007) (citing and discussing *Yocca*).   Whether such a contract exists is determined by "assessing whether the writing appears to be a contract complete in itself, importing a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement."  *Id.*  An integration clause demonstrates that the contract represents the parties' entire agreement.  *Yocca*, 854 A.2d 436.

District courts in the Third Circuit disagree over the extent of the *Dayhoff* holding. Some have applied the parol evidence rule to bar prior representations when the agreement is fully integrated.  Other courts have imposed the additional requirement that the representations sought to be introduced concern matters covered in the contract. *Compare Interwave Tech. Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 WL 3605272, at *18 (E.D. Pa. Dec. 30, 2005) ("[T]his court finds persuasive the numerous

opinions that interpreted *Dayhoff* to preclude parol evidence when the plaintiff is making a claim of fraudulent inducement and the contract at issue contains an integration clause."), *with Aamco Transmissions, Inc. v. Wirth*, No. 11-4250, 2011 WL 6088671, at *4 (E.D. Pa. Dec. 7, 2011) ("Where prior fraudulent representations are alleged, the parol evidence rule bars such representations where the written agreement: (1) contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause.") (quotation and citation omitted).  Reflecting this disagreement, the parties in this case rely on different standards to argue that the parol evidence rule does or does not apply.[7]  However, this dispute is not material to our parol evidence analysis.  Under either approach, the statements are barred.

The agency agreements contain integration clauses.[8]  The inducements Smith alleges concern matters addressed by the agency agreements.  Specifically, as expressed

---

[7] *Compare* Br. in Supp. of Defs.' Mot. to Dismiss 15 (quoting *Morales v. Superior Living Prods., LLC*, No. 07-4419, 2009 U.S. Dist. LEXIS 91578, at *20 (E.D. Pa. Sept. 30, 2009) for the proposition that "Pennsylvania law prohibits recovery on a claim of fraud in the inducement where the contract [at issue] represents a fully integrated written agreement."), *with* Pls.' Br. in Opp. to Mot. to Dismiss 20 (citing *HCB Contractors*, 652 A.2d at 1279-80 for the proposition that "[t]he parol evidence rule applies to bar only that evidence regarding claims *specifically* addressed in the written contract").

[8] R3001A Agency Agreement § I.C. ("This Agreement is the sole and entire agency agreement between the Company and Agency, and it supersedes and replaces any prior employment, agency, or other agreement between the Company and Agency and any of its officers, directors, shareholders, members, and employees.  This Agreement also supersedes any prior oral statements and representations by the Company and any prior written statements and representations by the Company in letters, manuals, booklets, memoranda, or any other format."); R3001S Agency Agreement § I.B. ("This Agreement is the sole and entire agency agreement between the Company and you, and it supersedes and replaces any prior employment, agency, or other agreement between the Company and you.  This Agreement also supersedes any prior written statements and representations by the Company to you in letters, manuals, booklets, memoranda, or any other format.").

Hence, if we only examined whether the contract is fully integrated to determine whether the parol evidence rule applies, the inquiry would be at an end, and the alleged inducing statements would be inadmissible.

in the agency agreement, the parties agreed that Smith was an independent contractor,[9] the business he generated belonged to Allstate,[10] and either party had a right to terminate the relationship according to established procedures.[11]

Smith alleges that Allstate "extolled the virtues of the exclusive agency agreement"[12] by representing that he would have a major stake in his business, including an ownership interest in his book of business, and be able to grow his business in a more productive way.[13] Because the agreement contains terms addressing the representations Smith relies upon and the agreement "supercedes any prior oral statements and representations by [Allstate],"[14] the parol evidence rule bars admission of these statements. Without these statements, Smith cannot make out a claim for fraudulent inducement or negligent misrepresentation. Therefore, Counts Four and Five of his complaint will be dismissed.

Burris does not identify specific statements Allstate made that induced him sign the agency agreement. Instead, he alleges that Allstate "publicly extolled the virtues" of the agreement. The agreement is unambiguous. It provides that Burris was an independent contractor,[15] Allstate owned all business he generated under the agreement,[16] he was

---

[9] R3001A Agency Agreement § I.B.

[10] R3001A Agency Agreement § I.A.

[11] R3001A Agency Agreement § XVII.

[12] Smith Compl. ¶ 108.

[13] Smith Compl. ¶¶ 30-31.

[14] R3001A Agency Agreement, § I.C.

[15] R3001S Agency Agreement § I.D.

[16] R3001S Agency Agreement § I.A.

required to meet business objectives established by Allstate,[17] his sole compensation was commission he earned,[18] and he or Allstate had the right to terminate the agreement.[19] The agreement contains terms which directly deal with the subject matter of how beneficial it would be for agents.  Even if it did not, Allstate's puffery cannot form the basis of Burris's inducement claims.  *See Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (holding statements that "you are assured of a safe and dependable helicopter," and that the helicopter was "easy to operate" were non-actionable puffery); *Teng Moua v. Jani-King of Minn., Inc.*, 810 F. Supp. 2d 882, 890 (D. Minn. 2011) (holding statements that owning a franchise was "good business" and that the business could continue "for a long time" constituted non-actionable puffery).  Counts Four and Five of Burris's complaint will be dismissed.[20]

### Unjust Enrichment - *Quantum Meruit*

Unjust enrichment, an equitable doctrine sounding in quasi-contract or contract implied in law, is unavailable where the parties' relationship is derived from a contract.  In other words, the presence of a contract bars a claim for unjust enrichment.  *Wayne Moving & Storage of N.J., Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148, 153 n.1 (3d Cir. 2010) (citation omitted); *see also Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)

---

[17] R3001S Agency Agreement § II.B.

[18] R3001S Agency Agreement §XV.

[19] R3001S Agency Agreement §§ XVII.

[20] Accordingly, we do not decide whether the gist of the action doctrine, the economic loss doctrine, or the statute of limitations bar the plaintiffs' inducement claims.

(plurality) ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract . . . .") (citations omitted); *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969) ("[W]e note that this Court has found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract.").

Despite this well-established principle, the plaintiffs argue that they may seek recovery under an unjust enrichment theory where contractual remedies are inadequate. They are incorrect.  Indeed, a contract governing the parties' relationship serves to bar an unjust enrichment claim, "regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Wilson Area Sch. Dist.*, 895 A.2d at 1254 (quoting *Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945)); *see also Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619-20 (E.D. Pa. 2003) (rejecting plaintiff's argument that an insufficient contractual remedy allows him to state an unjust enrichment claim and dismissing the claim).  Because the parties' relationships were governed by the agency agreements,[21] the plaintiffs may not pursue an unjust enrichment claim.  Thus, Count Three of their complaints will be dismissed.

## Breach of Contract

The plaintiffs allege that Allstate breached the agency agreements; and, as a result, they suffered the loss of their agencies together with the loss of investment capital, their

---

[21] Burris Compl. ¶ 62; Smith Compl. ¶ 72.

books of business, and income.  They allege that Allstate failed to conduct annual and semi-annual reviews as required by the Independent Contractor manual, which was incorporated into the agency agreement.  As claimed by the plaintiffs, the reviews would have alerted them to the problems, giving them the chance to cure or respond to the complaints.  Allstate counters that the plaintiffs' admitted breach of the agency agreement – failing to achieve a passing customer satisfaction score – bars recovery for Allstate's alleged breach of contract.

A material breach by one party entitles the non-breaching party to suspend performance of the contract.  *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009).  Consequently, a party who has committed a material breach may not insist upon performance of the contract.  *Id.* (quotation omitted).  On the other hand, an immaterial breach will not excuse the non-breaching party's performance.  *Cimina v. Bronich*, 537 A.2d 1355, 1358 (Pa. 1988) (citation omitted).  Whether a breach is material is an issue of fact unless the question "admits only one reasonable answer."  *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008).

Allstate relies on Section II.B. of the agency agreements, which requires that agents meet certain business objectives established by Allstate.  Among these goals are levels of "profitability, growth, retention, customer satisfaction and customer service."  According to the plaintiffs, Allstate based its termination decisions on the plaintiffs' failures to satisfy the customer satisfaction benchmarks.  The plaintiffs contend that they met all other stated objectives.  Whether the failure to achieve the customer satisfaction and service goals, which are not defined in the agreements, is material is a question for the factfinder.  So is whether Allstate's failure to conduct the periodic reviews amounted to a material breach

of the contract, excusing the plaintiffs from performing.

Allstate also argues that the plaintiffs' alleged damages are too speculative to permit recovery. In doing so, it invites us to engage in fact finding. Specifically, it asks us to assess evidence. That is not our function in considering a 12(b)(6) motion.

The plaintiffs have each stated a claim for breach of contract. Therefore, we shall deny Allstate's motion as to Count II.

### Implied Duty of Good Faith and Fair Dealing

Plaintiffs import claims for breach of the implied duty of good faith and fair dealing into their breach of contract claims. They allege that Allstate's "hostile takeover" of the plaintiffs' books of business breached the duty of good faith and fair dealing. Specifically, they allege that Allstate acted in bad faith when it terminated the agency agreements based on the ALI without first working with them to raise their customer service scores through the contractually mandated performance reviews. They also challenge the manner in which Allstate acquired their books of business.

The plaintiffs do not have a cause of action for an implied duty of good faith. An implied duty arising from the contract cannot supercede an express contract term. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000); *see also USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) ("There can be no implied covenant as to any matter specifically covered by the written contract between the parties." (quoting *Reading Terminal Merchs. Ass'n v. Samuel Rappaport Assocs.*, 456 A.2d 552, 557 (Pa. Super. Ct. 1983)). The agreements establish termination procedures, providing for immediate termination for cause or by either party upon ninety days written

14

notice.[22]  Therefore, the duty of good faith does not provide the plaintiffs with a cause of action to challenge the manner in which Allstate terminated their agency agreements.

In opposing the motion to dismiss, the plaintiffs rely on Section 205 of the Restatement (Second) of Contracts.  Pennsylvania courts have relied on Section 205, holding that there is a general duty of good faith and fair dealing in the performance of a contract.  *Baker v. Lafayette Coll.*, 504 A.2d 247, 255 (Pa. Super. Ct. 1986), *aff'd*, 532 A.2d 399 (1987).  Comment d provides examples of strains of bad faith, including "abuse of power to specify terms."

The plaintiffs maintain that Allstate abused its authority by setting unreasonable customer satisfaction standards under the contract.  In predicating its termination of the relationship on the failure to meet these standards, the plaintiffs argue that Allstate breached the duty of good faith and fair dealing.  However, the agreements provided that either party could terminate the contract without cause.  The plaintiffs cannot rely on an implied duty to alter this provision by challenging Allstate's proffered reason for terminating the agreements because Allstate was not required to provide a reason in the first place.

The agreements also provide the processes for payment upon their termination.[23] The plaintiffs cannot override these provisions by alleging that Allstate breached an implied warranty by forcing them to sell their books of business.

The plaintiffs attempt to support their good faith claims by relying on 40 Pa. Cons. Stat. Ann. §§ 241-46 (West 2012) ("Act 143" or "Act").  Act 143 establishes notice and

---

[22] R3001A Agency Agreement § XVII; R3001S Agency Agreement § XVII.

[23] *See* R3001A Agency Agreement § XIX; R3001S Agency Agreement § XVII.B.2.

administrative review requirements when an insurer terminates its contract with an agent. *See* 40 Pa. Cons. Stat. Ann. § 242(a), (d).  The plaintiffs do not claim that Allstate violated the Act when it terminated the agency agreement.[24]  Instead, they contend that the Act evinces an "overarching policy that governs the termination of agency agreements."[25] Because Allstate did not follow the termination procedures set forth in the Act, plaintiffs argue that it breached the implied covenant of good faith and fair dealing implicit in all contracts.

The Act, by its express terms, does not apply to "business owned by the insurer and not by the agent, provided such insurer offers to continue such policies through another of its agents."  40 Pa. Cons. Stat. Ann. § 241.1(b).[26]  In the agency agreement, the parties agreed that Allstate "own[s] all business produced under the terms of th[e] Agreement."[27] As plaintiffs allege, Allstate sold their books of business to other agents with Allstate offering policies through other agents.  Accordingly, there can be no cause of action arising out of an implied duty of good faith and fair dealing under Act 143 because the statute expressly provides that it does not apply to the type of business arrangement at issue here.

---

[24] *See* Pls.' Brief in Opp'n to Mot. to Dismiss 8 n.5 ("Plaintiffs recognize that the Act 143 [sic] does not provide a remedy to enforce the termination provisions of the Agency Agreements through the Commonwealth of Pennsylvania, Department of Insurance.  However, Plaintiffs contend that Defendants' failure to follow the termination provisions of Act 143 which evidence the public policy of Pennsylvania's General Assembly to protect the insured demonstrates evidence of Defendants' breach of the implied covenant of good faith and fair dealing.).

[25] Pls.' Brief in Opp'n to Mot. to Dismiss 7.

[26] The Act defines "Agent" as: "An individual, partnership or corporation, licensed by the Insurance Department, who contracts with an insurer to sell insurance on behalf of the insurer."  40 Pa. Cons. Stat. Ann. § 241.  It defines "Insurer" as: "An insurance company, association or exchange authorized to transact and transacting the business of property or casualty insurance, or both, in the Commonwealth."  *Id.*

[27] R3001A Agency Agreement, § I.A.; R3001S Agency Agreement, § I.A.

*See Mattus v. Allstate Corp.*, No. 11-681, slip op. at *6-7 (M.D. Pa. Sept. 15, 2011) (holding that plaintiff challenging Allstate's termination of the agency agreement "impermissibly attempt[ed] to incorporate the protections of Act 143 into the contract by equating such protections with the duty of good faith").

### Negligence

In Count Five, the plaintiffs allege that Allstate was negligent in the performance and termination of the agency agreement.[28]   Allstate correctly argues that the plaintiffs' negligence claims are barred by the "gist of the action" doctrine.

Under the gist of the action doctrine, plaintiffs are precluded from "recasting" a claim for breach of contract into a tort claim. *Erie Ins. Exch. v. Abbott*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009); *see also Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010). The "critical" distinction between a breach of contract claim and a tort claim "is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" *Erie Ins. Exch.*, 972 A.2d at 1238 (quoting *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486–87 (Pa. Super. Ct. 2007)).   Where the duty the defendant allegedly breached is intertwined with contractual obligations, the claim sounds in contract, not tort.  *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, No. 06-3959, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006).

The plaintiffs' negligence claims challenge the manner in which Allstate performed

---

[28] Burris Compl. ¶ 109; Smith Compl. ¶ 119.

under and terminated a contract governing the parties' relationship.  The claims are grounded in the contract.  Thus, they are barred by the gist of the action doctrine.[29]

### Discrimination in Contracting – 42 U.S.C. § 1981

The plaintiffs claim that they, as African Americans, were disparately impacted by Allstate's reliance on ALI scores because they were the only two agents terminated in Pennsylvania on the basis of low ALI scores.[30]  They also challenge the use of the ALI in measuring customer satisfaction in minority communities.  Specifically, they assert that the survey was disseminated by mail, but "[m]embers of an urban minority community are largely distrustful and are more likely to disregard mailed surveys";[31] "Allstate failed to differentiate between responses critical of decisions made by Allstate from those critical of the agency or agent";[32] "[i]n evaluating the responses, Allstate failed to account for the inherent nonresponsive issues in a predominant [sic] minority clientele";[33] and "Allstate failed to compare the survey score to the  [plaintiffs'] retention rate[s]."[34]

Unlike Title VII, which permits a claim based on a theory of discriminatory impact, § 1981 provides a cause of action only for *purposeful* disparate treatment.  *Gen. Bldg.*

---

[29] Smith also predicates his negligence claim on a purported breach of a duty created by Act 143. Because the Act does not apply to the type of business arrangement at issue here, Smith cannot rely on the Act to support his negligence claim.

[30] Burris Compl. ¶ 73; Smith Compl. ¶ 83.

[31] Burris Compl. ¶ 67; Smith Compl. ¶ 77.

[32] Burris Compl. ¶ 69; Smith Compl. ¶ 79.

[33] Burris Compl. ¶ 70; Smith Compl. ¶ 80.

[34] Burris Compl. ¶ 71; Smith Compl. ¶ 81.

*Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 388-91 (1982); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002).  To establish § 1981 liability for intentional racial discrimination, plaintiffs must show that: (1) they belong to a racial minority; (2) the discrimination involved the right to make and enforce contracts; and, (3) the defendants had an intent to discriminate on the basis of race.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). The core of a § 1981 action is *intentional* discrimination.

The plaintiffs do not plead intentional discrimination.  The allegation that "Allstate failed to make any adjustments for the demographic, racial or ethnic make-up of an agency's customer base"[35] falls short of a claim that Allstate intended to discriminate against African-American agents or intended the ALI to negatively impact African-American agents.[36]  More importantly, the plaintiffs' challenges to the ALI focus on the race and ethnicity of *customers*, not the agents.  The plaintiffs attack the reliability of the ALI.  They do not allege that the ALI was purposefully designed to discriminate against African-American agents.   Assuming, as plaintiffs allege, that "[i]t is well known that minority communities generally do not respond to [mailed] surveys and those that do are the ones who have negative statements to make,"[37] ALI scores would negatively impact any agent with a large minority clientele, regardless of that agent's race or ethnicity.  In that scenario, white agents with minority customers would score worse in customer satisfaction than

---

[35] Smith Compl. ¶ 53.

[36] For this reason, plaintiffs' reliance on *Hicks v. Arthur*, 843 F. Supp. 949 (E.D. Pa. 1994) is misplaced.  In *Hicks*, the plaintiff alleged that she was denied a promotion and eventually fired "because she was black."  *Id.* at 955.

[37] Burris Compl. ¶ 44; Smith Compl. ¶ 52.

equally performing minority agents with white customers.[38]  Thus, the race of the clientele, not the agents, affects the measure of customer satisfaction.

Absent allegations linking Allstate's actions to the plaintiffs' race, we are left with the assertion that the two agents terminated for low customer satisfaction scores are African American.  This allegation is insufficient to state a claim under § 1981.

### Dismissal of Parties

Allstate moves to dismiss The Allstate Corporation as a defendant.  The plaintiffs allege that The Allstate Insurance Company is a wholly owned subsidiary of The Allstate Corporation.[39]  The Allstate Insurance Company, not The Allstate Corporation, is the signatory to Burris and Smith's agency agreements.  Parent corporations are not normally liable for the contractual obligations of wholly owned subsidiaries.  *See, e.g.*, *Lowenstein v. Catholic Health E.*, 820 F. Supp. 2d 639, 643-44 (E.D. Pa. 2011).  However, it is premature to determine whether The Allstate Corporation may be held liable for the purported breach of the agreement by The Allstate Insurance Company.  For example, plaintiffs' breach of contract claim is predicated on Allstate's failure to conduct formal performance reviews.  We do not know what role, if any, The Allstate Corporation had in conducting the performance reviews.  Therefore, we decline to dismiss The Allstate

---

[38] The plaintiffs did not allege that the ALI customer satisfaction scores were enforced selectively, resulting in Allstate terminating the plaintiffs' agency agreements while retaining white agents with similar scores.

[39] Burris Compl. ¶ 20; Smith Compl. ¶ 23.

Corporation as a defendant at this time.[40]

## Conclusion

We shall grant Allstate's motion to dismiss the plaintiffs' fraud, negligence, unjust enrichment, breach of good faith and fair dealing, and § 1981 claims.  We shall deny the motion to dismiss the plaintiffs' breach of contract claims.  The Allstate Corporation and the Burris Agency shall remain as parties.

---

[40] Similarly, we shall not dismiss the Burris Agency as a plaintiff at this time.  Although Burris signed the agency agreement as an individual, not on behalf of his agency, he alleges that the agency agreement requires that his Agency receive the benefit of the formal performance reviews.  *See* Burris Compl. ¶ 79 ("The Agency Agreement mandates that the Burris Agency receive a formal evaluation on an annual basis and a mid-year review.").